2012 Ark. App. 69

**Thomas T. JONES, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–244.**

Court of Appeals of Arkansas.

Jan. 18, 2012.

William McNova Howard Jr., Pine Bluff, for appellant.

Dustin McDaniel, Atty. Gen., Karen Virginia Wallace, Little Rock, for appellee.

DOUG MARTIN, Judge.

This is a no-merit appeal from the revocation of appellant Thomas T. Jones's probation wherein he was sentenced to a total of sixteen years in the Arkansas Department of Correction. Jones's counsel has filed a motion to withdraw and a no-merit brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and Arkansas Supreme Court Rule 4–3(k)(1) (2011). Jones was provided a copy of his counsel's brief and was notified of his right to file a list of pro se points on appeal within thirty days; he has submitted three pro se arguments for reversal.

Jones was charged with one count of second-degree domestic battery on May

15, 2007, in CR–2007–285-5–2. He was subsequently charged with a second count of second-degree domestic battery on August 27, 2007, in CR–2007–676-5–2. Jones pled guilty to both counts on September 14, 2007, and the Jefferson County Circuit Court sentenced him to sixty months' probation on each charge, to be served concurrently. As part of the order |₂placing Jones on probation, he was ordered to have no contact with Kimberly Jones Miller, the victim of his domestic battery. In addition, the conditions of his probation required him to not commit any criminal offense or drink alcohol or use drugs. Jones was also required to pay court costs and fines, complete 120 hours of community service, and obtain a GED.

The State filed a petition to revoke Jones's probation on July 27, 2010, alleging that he committed numerous offenses, including driving while intoxicated, violation of a protective order, and domestic battery. In addition, the revocation petition alleged that Jones tested positive for marijuana, opiates, and cocaine; failed to report as instructed; and violated the no-contact order. Following a revocation hearing on November 18, 2010, the circuit court entered an order revoking Jones's probation and sentencing him to ten years in the Arkansas Department of Correction in CR–2007–285-5–2 and six years in CR–2007–676-5–2, with the sentences to run consecutively.

■■■■ As noted above, Jones's counsel has filed a no-merit brief and motion to withdraw pursuant to *Anders v. California, supra.* An attorney's request to withdraw from appellate representation based upon a meritless appeal must be accompanied by a brief that contains a list of all rulings adverse to his client that were made on any objection, motion, or request made by either party. *Eads v. State,* 74 Ark.App. 363, 47 S.W.3d 918 (2001). The argument section of the brief must contain an explanation of why each adverse ruling is not a meritorious ground for reversal. *Id.* This court is bound to perform a full examination of the proceedings as a whole to decide if an appeal would be wholly frivolous. *Campbell v. State,* 74 Ark.App. 277, 47 S.W.3d 915 (2001).

■■■ |₃In his brief, counsel notes six objections raised below and posits that, as each amounted to an evidentiary objection, the circuit court did not abuse its discretion in ruling on any of them. We agree. Those objections were as follows:

- During cross-examination of Jones's probation officer, Brooke Norsworthy, counsel asked Norsworthy whether Jones had told her that Miller "kept pursuing him." Norsworthy said he had told her that, and counsel asked, "Now, when he told you that, did you think he was lying to you or did you think he was telling the truth or what?" The State objected that the question called for speculation; the court agreed and sustained the objection.

- During cross-examination of Norsworthy about Jones's testing positive for opiates, which he claimed was the result of taking prescription medication, Norsworthy explained that, even if Jones had a prescription, it had expired. Counsel asked, "Okay, but have you ever had a prescription and had old medicine laying around the house?" The State objected, arguing that what Norsworthy has done with her medicine was irrelevant; the court agreed and sustained the objection.

- During cross-examination of Pine Bluff Police Officer Billy Dixon, who responded to Miller's 911 call, Jones's counsel asked whether, if Miller went to Jones's house, "that sound[ed] like a person who's got an order of protec-

tion?" The State objected, contending the question called for speculation; the court agreed and sustained the objection.

• During the State's direct examination of Miller, the State asked whether she had had contact with Jones and how that contact came about. Miller began talking about her animals' being injured, and Jones objected that her answer was not responsive to the question. The State asserted that it was going to try to narrow Miller's responses, and the court allowed the State to continue.

• During the State's direct examination of Miller, the State was asking whether Miller allowed Jones to be around her despite the no-contact order. The State asked, "So, sometimes to keep him from getting upset, do you agree to see him or be around him or ... let him around you?" Counsel objected to leading, but the court disagreed and overruled the objection, noting that the rules of evidence did not apply to revocation proceedings and disagreeing, in any event, that the prosecutor was telling the witness what to say.

• During cross-examination of Miller, Jones's counsel asked her, "according to your testimony, you're terrified of my client, is that right?" Miller replied, "I'm terrified of him when he is aggressive, yes." Counsel then asked, "Oh, in other words, you're terrified when he doesn't do what you want him to do; is that what you're saying?" The State objected, and the court admonished counsel not to question Miller in an aggressive or argumentative fashion.

■ A trial court has broad discretion in evidentiary rulings, and this court will not reverse a trial court's ruling on the introduction of evidence unless the lower court has abused that discretion.

*Williams v. State,* 2011 Ark. App. 675, 386 S.W.3d 609. Moreover, even when a circuit court errs in admitting evidence, the appellate courts will affirm a conviction and deem the error harmless if the evidence of guilt is overwhelming and the error is slight. *Marmolejo v. State,* 102 Ark.App. 264, 284 S.W.3d 78 (2008). As discussed below, the evidence supporting the revocation of his probation was overwhelming; thus, even assuming that the trial court erred in admitting any of this testimony, any error would be harmless and thus could not stand as the basis for a meritorious argument on appeal.

Counsel asserts that there was sufficient evidence to support the revocation of Jones's probation. In addition, Jones also raises the sufficiency of the evidence in one of his pro se points on appeal. We agree with counsel and conclude that any argument related to the sufficiency of the evidence would not form a meritorious basis for appellate review.

■ In probation-revocation proceedings, the State has the burden of proving that an appellant violated the terms of his probation, as alleged in the revocation petition, by a preponderance of the evidence, and this court will not reverse the trial court's decision to revoke probation unless it is clearly against the preponderance of the evidence. *Amos v. State,* 2011 Ark. App. 638, 2011 WL 5110125; *Maxwell v. State,* 2009 Ark. App. 533, 336 S.W.3d 881. The State need only show that the appellant committed one violation in order to sustain a revocation. *Amos, supra.*

As noted above, the revocation petition filed by the State in this case alleged that Jones had been arrested on various criminal charges, including domestic battery; tested positive for controlled substances; failed to report as instructed; and violated the no-contact order keeping him away from Miller. At the revocation hearing,

Jones's probation officer, Brooke Norsworthy, testified that Jones had tested positive for cocaine and opiates; in addition, Norsworthy testified that Jones had not obtained his GED as required by the trial court. Norsworthy further testified that Jones had admitted to her on several occasions that he had been in contact with Miller, although he claimed that Miller initiated those encounters.

Jefferson County Sheriff's Deputy David Walker testified that he responded to a domestic disturbance at Miller's home on January 31, 2010, where he found her with blood on her nightgown and a bruise on her cheek. Miller told Walker that Jones caused her injuries. Trooper Jassen Travis of the Arkansas State Police, who arrested Jones later that day, testified that Jones was argumentative and had a strong odor of intoxicants about him. Officer Billy Dixon of the Pine Bluff Police Department similarly testified that he was dispatched to a domestic disturbance involving Miller and Jones on March 11, 2010. Dixon observed redness around Miller's neck, and Miller told him that Jones had grabbed her around the neck. Miller also testified, describing the incidents in which Jones became violent and angry with her.

Jones testified on his own behalf. Although he denied knowing how he tested positive for cocaine, he conceded that he smoked marijuana, contacted Miller despite a no-contact order, and drank alcohol on several occasions during his probationary period.

At the conclusion of the revocation hearing, the circuit court found that Jones had accrued two new domestic-battery charges in violation of the first condition of his probation. The court also found that Jones had been arrested for driving under the influence and had testified that he had drunk whiskey with his father in violation of the second condition of his probation. The court further pointed to Jones's testing positive for cocaine and admitting that he had smoked marijuana on several occasions in violation of yet another condition of probation. Finally, the court pointed out that Jones had not obtained his GED as required by the terms of his probation and had violated the no-contact order.

In his pro se argument on appeal challenging the sufficiency of the evidence, Jones asserts that "statements and testimony by [Miller] contradict each other, as well as testimony by other witnesses," and "the judge ruled on hearsay and not actual admission of evidence." As to Jones's argument that the testimony was contradictory, it is the duty of the trier of fact—the trial judge in this instance—to resolve any contradictions, conflicts, and inconsistencies in a witness's testimony and to determine the credibility of the witnesses. *Lee v. State*, 2010 Ark. App. 15, 2010 WL 26391; *B.J. v. State*, 56 Ark.App. 35, 937 S.W.2d 675 (1997). Jones cites no authority to contradict the well-established rule that an appellate court defers to the trial court on questions of witness credibility and conflicting testimony. *See Bradley v. State*, 347 Ark. 518, 65 S.W.3d 874 (2002); *Autrand v. State*, 2010 Ark. App. 245, 2010 WL 816227. As for his hearsay argument, Jones never raised a hearsay objection below. It is well settled that the appellate courts will not address an argument that is raised for the first time on appeal. *Stansell v. State*, 2011 Ark. App. 670, 2011 WL 5429589; *Caldwell v. State*, 2011 Ark. App. 358, 2011 WL 1795524.

As to his contention that the State failed to prove by a preponderance of the evidence that he violated a condition of his probation, Jones fails to acknowledge that he had admitted to smoking marijuana, contacting Miller despite the no-contact

order, and drinking alcohol. Jones's testimony, standing alone, constitutes sufficient evidence that he violated the terms and conditions of his probation.

In his second pro se point, Jones contends that, pursuant to Arkansas Code Annotated section 16–93–402 (Repl.2006), the trial court erred in sentencing him to a "prison term longer than [the] remainder of [the] time originally imposed." He argues that he was "originally sentenced to a total of five years, and at my revocation hearing, I was sentenced to ten years and six years respectively."

■■■ Section 16–93–402(c)(5), on which Jones relies, provides that a court may revoke a probation and "require the probationer to serve the sentence imposed or any lesser sentence which might have been originally imposed." When, however, no sentence was initially imposed, as happened here, the statute has no application. In *Lee v. State,* 299 Ark. 187, 772 S.W.2d 324 (1989), the supreme court explained that probation is a procedure whereby a defendant who pleads or is found guilty of an offense is released without pronouncement of sentence subject to the supervision of a probation officer. *Lee,* 299 Ark. at 189, 772 S.W.2d at 325 (citing Ark.Code Ann. § 5–4–101(2)). When a defendant is placed on probation and |₈no sentence is imposed, and the circuit court later revokes the probation, the court may enter a judgment of conviction and may impose any sentence on the defendant that might have been imposed originally for the offense of which he was found guilty. *Id.* at 190, 772 S.W.2d at 326; *see also* Ark.Code Ann. § 5–4–309(f)(1)(A) (Repl.2006).

Here, Jones entered guilty pleas to one count of second-degree domestic battery and one count of third-degree domestic battery, and he was placed on probation. Second-degree domestic battery is a Class C felony, Ark.Code Ann. § 5–26–304(b)(1) (Repl.2006), which has a sentencing range of not less than three years nor more than ten years. Ark.Code Ann. § 5–4–401(1)(3) (Repl.2006). Third-degree domestic battery is a Class D felony, Ark.Code Ann. § 5–26–305(d)(2)(B) (Repl.2006), for which a sentence may not exceed six years. Ark. Code Ann. § 5–4–403(a)(4) (Repl.2006). Accordingly, his sentences of ten and six years, respectively, are sentences that might have been originally imposed for the offenses of which he was found guilty.

Finally, Jones argues that his revocation hearing was held more than sixty days after his arrest, in violation of Arkansas Code Annotated section 5–4–310(b)(2) (Repl.2006).[1] That statute provides that a revocation hearing "shall be conducted by the court that ... placed [the defendant] on probation within a reasonable period of time after the defendant's arrest, not to exceed sixty (60) days."

■■■ |₉The purpose of section 5–4–310 is to assure that a defendant is not detained in jail for an unreasonable time awaiting his revocation hearing. *Holmes v. State,* 33 Ark.App. 168, 803 S.W.2d 563 (1991). The constitutional right to a speedy trial does not apply to probation-revocation hearings, however, *see White v. State,* 329 Ark. 487, 951 S.W.2d 556 (1997), and the time limitation provided in the statute is not intended to be jurisdictional. *Haskins v. State,* 264 Ark. 454, 572 S.W.2d 411 (1978). Rather, it represents the period beyond which the hearing cannot be delayed if the defendant objects. *Id.* Where a defendant does not object to the timeliness of the hearing, he waives his

1. Jones was arrested on January 31, 2010, and his revocation hearing was held on November 18, 2010.

right to insist that the revocation hearing be held within sixty days. *Id.* Here, the record reflects that Jones never objected to the alleged untimeliness of the revocation hearing. As such, Jones waived any argument on this issue.

Based on our review of the record and the brief presented to this court, we conclude that there has been full compliance with Rule 4–3(k) and that the appeal is without merit. Counsel's motion to be relieved is granted, and the judgments of conviction upon revocation are affirmed.

Affirmed.

PITTMAN and WYNNE, JJ., agree.